UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TRAVONTAE E. BEASLEY #615584,                     Case No. 2:24-cv-106

               Plaintiff,                     Hon. Maarten Vermaat
                                                 U.S. Magistrate Judge
   v.

UNKNOWN WATSON, et al.,

               Defendants.

_____/

## OPINION

### I. Introduction

This Opinion addresses Defendant Watson's motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies against him.  (ECF No. 15.)  Plaintiff responded in opposition on February 27, 2025.  (ECF No. 20.)

Plaintiff – State prisoner Travontae E. Beasley – filed an unverified complaint and an unverified amended complaint under 42 U.S.C. § 1983 alleging that Defendant Watson violated his Eighth Amendment rights while he was incarcerated at Marquette Branch Prison (MBP).  (ECF Nos. 1, 5.)  Beasley specifically claims that Defendant Watson subjected him to excessive force under the Eighth Amendment. (ECF Nos. 1, 5.)

Beasley says that on March 13, 2024, he was the victim of a vicious, homophobic attack by a group of Corrections Officers (COs).  (ECF No. 5, PageID.22.) Beasley states that between 9:00 pm and 11:00 pm, he was being escorted from the

"yard module" or "cage" back to his cell by a group of COs, which included Watson. (*Id.*)  Beasley explains that the transport was recorded by one of the COs using a "hand-held video recorder" which "captures audio and video." (*Id.*)  Beasley says that Watson "very aggressive[ly] restrained him for the escort using both handcuffs and belly chains. (*Id.*)  Beasley asked a member of the escort team if he was going to "let [Watson] do this," and the CO nodded affirmatively. (*Id.*)

Beasley states that once he was restrained, the cage door opened to allow him to exit. (*Id.*)  Watson then "grabbed [his] left arm and began [the] escort" back to Beasley's cell. (*Id.*)  Beasley says he felt "extremely nervous" as he walked and that he observed "at least five C/Os [he] was unfamiliar with." (*Id.*)

Beasley alleges that before they had been able to walk more than fifteen or twenty feet from the cage, CO Watson instigated the attack against him. (*Id.*) Watson "slammed" Beasley into the concrete. (*Id.*)  Beasley says he was unable to brace himself because of the restraints and that his "face took most of the impact." (*Id.*)  Watson then grabbed Beasley's head by his hair and "forc[ed his] face into the concrete." (*Id.*)  Watson allegedly asked, "Hows [sic] the concrete taste f[-slur]?" (*Id.*) Beasley says Watson "began using his hand to apply pressure to [Beasley's] neck" and was "cutting off [his] oxygen." (*Id.*)  As he did so, Watson allegedly "leaned close" and said, "F[*]cking n[-word]." (*Id.*)

Beasley states that while Watson was choking him, other members of the escort team were also attacking him. (*Id.*)  Beasley says one CO repeatedly kneed him on the right side of his ribcage. (*Id.*)  Another CO, or two, allegedly held down

Beasley's legs.  (*Id.*)  Beasley said he was "face down in a growing puddle of [his] blood" and that he was "completely defenseless."  (*Id.*)  Beasley says that the attack stopped when he heard someone say, "We got blood."  (*Id.*)  At that time, a "spit bag" or "spit mask" was placed over his head.  (*Id.*)

The next day, Beasley says he was transferred to Ionia Correctional Facility. (*Id.*)  He states that upon arrival, the administration documented all of his injuries and healthcare was notified that there was blood in his urine.  (*Id.*)

On January 24, 2025, Defendant Watson moved for summary judgment on the basis of exhaustion.  (ECF No. 15.)  The Defendant argues that Beasley failed to properly exhaust his administrative remedies because he did not pursue any Step I grievances against Watson through Step III that were submitted in the relevant timeframe and completed before he filed this lawsuit.  (ECF No. 16, PageID.64.)

In the opinion of the undersigned, there exists no genuine dispute of material fact as to whether Beasley properly exhausted his administrative remedies. Therefore, the Court **grants** the Defendant's motion for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

---

[1]    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024).   In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

the evidence is so powerful that no reasonable jury would be free to disbelieve it."
*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly,
summary judgment in favor of the party with the burden of persuasion "is
inappropriate when the evidence is susceptible of different interpretations or
inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA),
42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions
under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter
v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A
prisoner must first exhaust available administrative remedies, even if the prisoner
may not be able to obtain the specific type of relief he seeks in the state administrative
process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215
F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).
In order to properly exhaust administrative remedies, prisoners must complete the
administrative review process in accordance with the deadlines and other applicable
procedural rules.  *Jones*, 549 U.S. at 218−19; *Woodford v. Ngo*, 548 U.S. 81, 90−91
(2006).  "Compliance with prison grievance procedures, therefore, is all that is
required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare
circumstances, the grievance process will be considered unavailable where officers
are unable or consistently unwilling to provide relief, where the exhaustion
procedures may provide relief, but no ordinary prisoner can navigate it, or "where
prison administrators thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.*  When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective September 25, 2023) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.*, ¶ W.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.*, ¶¶ W, CC.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.*, ¶ CC.  The

Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.*, ¶ Y (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130, ¶¶ JJ.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.*, ¶ LL.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.*,¶¶ NN.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.*, ¶ OO.Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues."  *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept.

25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received

---

[2]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13−17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590−91 (6th Cir. 2017).[3]

---

[3]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

### IV. Analysis

Defendant Watson argues that Beasley failed to properly exhaust his administrative remedies because he did not pursue any Step I grievances against Watson through Step III that were (1) submitted in the relevant timeframe and (2) completed before he filed this lawsuit. (ECF No. 16, PageID.64.) Beasley addresses exhaustion in his unverified supplement to his First Amended Complaint, his unverified response in opposition, and his verified declaration. (ECF Nos. 19, 20, 21.) In his declaration, Beasley asserts that "all three steps of the grievance process was honored," that he was "never written a misconduct," and that MDOC actors "attempt[ed] to prevent the grievance process." (ECF No. 21, PageID.96.)

Defendant Watson provided Beasley's Step III Grievance Report with his motion for summary judgment. (ECF No. 16-3, PageID.80.) The affidavit included with the report states that it "is taken from the Michigan Department of Corrections' (MDOC) database that tracks all prisoner/parolee grievances filed at Step II, which have been responded to at Step III." (*Id.*, PageID.78.) The Defendant identifies two grievances as potentially relevant to Beasley's complaint. They are: MBP-23-05-0985-28f (MBP-985) and MBP-23-05-0984-28f (MBP-984). (*Id.*, PageID.80.) The Step III Grievance Report is shown below:

**MDOC Prisoner Step III Grievance Report**

1/1/2018 to Present

| Prisoner #: | 615584 | Last Name: | | Beasley | | First Name: | | Travonte | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 7/29/2024 | MBP-24-03-0354-28z | 28z | 18 | 3/13/2024 | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Notes: | | | | | | | | | | |
| 7/18/2023 | MBP-23-05-0985-28f | 28f | 18 | 5/6/2023 | ☐ | ☐ | ☐ | ☑ | ☑ | 8/17/2023 |
| Notes: | | | | | | | | | | |
| 7/18/2023 | MBP-23-05-0984-28f | 28f | 18 | 5/6/2023 | ☐ | ☐ | ☐ | ☑ | ☑ | 8/17/2023 |

(*Id.* (Beasley's Grievance Report).)

In his declaration, Beasley asserts that Watson failed to identify grievances relevant to his claims. (ECF No. 21, PageID.97.) Beasley states that grievances MBP-985 and MBP-984 were "derived from incidents that occurred while I was being housed at Oaks Correctional Facility." (*Id.*) Beasley explains that the grievance relevant to this case is MBP-2024-03-354-26A (MBP-354). (*Id.*)

### A. MBP-985 and MBP-984

Defendant Watson asserts that Beasley failed to properly exhaust his claims through MBP-985 and MBP-984 because the grievances were not submitted in the "relevant time-frame." (ECF No. 16, PageID.64.) Beasley concedes that these grievances are irrelevant and "had nothing to do with" his excessive force claim against Watson. (ECF No. 21, PageID.97.) Thus, in the opinion of the undersigned, there exists no genuine dispute of material fact as to whether Beasley properly exhausted his administrative remedies through MBP-985 or MBP-984.

11

### B. MBP-354

However, Beasley does assert that he properly exhausted his administrative remedies and states that he did so through MBP-354.  (ECF No. 21, PageID.97.) Defendant Watson argues in his reply that Beasley failed to properly exhaust his claims through MBP-354 because the grievance was not appealed through Step III *before* Beasley filed his suit or amended his complaint.  (ECF No. 24, PageID.109−10.)

At Step I, Beasley "state[d] Officer Watson used excessive force against him." (ECF No. 21-1, PageID.102 (Complaint Summary included in Step I Grievance Response).)  MBP-354 was denied at Step I on April 5, 2024.  (*Id.*)  The Respondent "reviewed the critical incident report, handheld video footage, and misconduct report" and interviewed all staff on scene during the incident.  (*Id.*)  The Respondent found that "[w]hile being escorted from the segregation yard modules" "Beasley pulled away [from staff], resisted staff's loud verbal commands, and attempted to spit at Officer Watson."  (*Id.*)  The Step I Grievance Response form is shown below:

**STEP I GRIEVANCE RESPONSE SUPPLEMENTAL FORM**

(Use if space on the CSJ-247A is insufficient for a full response by stating on the CSJ-247A "See attached CSJ-247S")

| Prisoner Last Name: | Prisoner #: | Lock/Location: | | Grievance #: |
|---|---|---|---|---|
| Beasley | 615584 | 01-28/ICF | | MBP-24-03-0035-426A |
| Prisoner Interviewed: | YES ☐ | NO ☒ | If "NO", Reason:  Prisoner at another Facility | |
| Extension Granted: | YES ☐ | NO ☒ | If "YES", Enter End Date: | |

**COMPLAINT SUMMARY:**
Prisoner 615584 Beasley states Officer Watson used excessive force against him.

**INVESTIGATION SUMMARY:**
I reviewed the critical incident report, handheld video footage, and misconduct report. I interviewed Captain Leach, Sergeant Nachtman, and Officer St. Onge who were on scene during the incident. I interviewed Officer Watson. All staff reported that prisoner 615584 Beasley became assaultive towards staff. They stated prisoner Beasley pulled away, resisted staff's loud verbal commands, and attempted to spit at Officer Watson. All staff reported Officer Watson conducted himself in a professional manner, did not use excessive force, and used the minimum amount of force necessary to gain compliance.

**APPLICABLE POLICY, PROCEDURE, ETC.:**
PD 04.05.110 Use of Force (EXEMPT)

**DECISION SUMMARY:**
After reviewing the critical incident report, misconduct, and speaking with staff on scene who witnessed the incident, it is determined that there has been no violation of PD 03.03.130. While being escorted from the segregation yard modules, prisoner 615584 Beasley pulled away from staff and became physically and verbally assaultive towards staff resulting in the use of force. Officer Watson is known to conduct himself in a professional manner and follow all department policies and procedures. Grievance is denied.

| RESPONDENT NAME: | Sgt. Jeske | TITLE: | CSS1 |
|---|---|---|---|
| RESPONDENT SIGNATURE: | *Sgt. (sig)* | DATE: | 4/5/24 |
| REVIEWER NAME: | *Alt Greenwald* | TITLE: | CSS2 |
| REVIEWER SIGNATURE: | *(sig)* | DATE: | 4/5/24 |

Distribution: Original - Step I Grievance Coordinator    Copies – 3 To Grievant (1 Prisoner Copy; 1 for Step II filing; 1 for Step III filing)

(*Id.*)

At Step II, Beasley stated that he "put up <u>NO</u> resistance" and that he was the victim of an "un-provoked attack."  (*Id.*, PageID.100.)  The Respondent received Beasley's Step II appeal on May 30, 2024.  (*Id.*)  The Respondent denied the appeal stating that "[n]o information has been presented or found that would support

[Beasley's] claim that staff violated department policy."  (*Id.*)  The appeal was returned to Beasley on June 3, 2024.  (*Id.*)

At Step III, Beasley stated that "[f]ootage will show that I was defenseless and was <u>not</u> assaultive at all."  (*Id.*)  The Respondent received the Step III appeal on October 11, 2024.  (*Id.*, PageID.101.)  The Step III appeal was denied and mailed to Beasley on October 17, 2024.  (*Id.*)  Beasley's Step II and Step III appeals are shown below:



(*Id.*)

The PLRA requires prisoners bringing an action with respect to prison conditions under 42 U.S.C. § 1983 to properly exhaust their administrative remedies

*prior* to filing suit.  42 U.S.C. § 1997e(a).  The filing of a Plaintiff's complaint serves

as the marker for when the Plaintiff was required to complete exhaustion of available

administrative  remedies.    A  prisoner-plaintiff  may  not  exhaust  administrative

remedies during the pendency of their federal suit.  *Freeman v. Francis*, 196 F.3d 641,

645 (6th Cir. 1999) (citing *Larkins v. Wilkinson*, 1998 WL 898870 at *2 (6th Cir. Dec.

17, 1998) (unpublished)).  In *Mattox*, however,  the Sixth Circuit held that in a narrow

set  of  circumstances  a  prisoner-plaintiff  may  amend  their  complaint  to  add  new

claims that have been exhausted after the commencement of the lawsuit.  851 F.3d

at 592.  There, the Sixth Circuit held that where a "a prisoner exhausts some of his

claims after a proper federal lawsuit has been filed as to other claims, and then moves

to  amend  his  complaint  to  add  the  newly  exhausted  claims,  the  policy  behind  the

PLRA's exhaustion requirement is still met because prison officials will have had a

fair opportunity to address the new claims on the merits."  *Id.*

Beasley  filed  his  initial  complaint  concerning  excessive  force  by  Defendant

Watson on June 20, 2024.[4]  (ECF No. 1, PageID.4.)  Beasley filed his First Amended

Complaint on July 19, 2024.  (ECF No. 5, PageID.23.)  The Respondent at Step III for

MBP-354 did not receive the Step III appeal until October 11, 2024.  (ECF No. 21-1,

PageID.101.)  The Step III response for MBP-354 was not returned to Beasley until

October 17, 2024 – more than three months after he filed his amended complaint.

---

[4]    Under the "prison mailbox rule" a pro se prisoner's complaint is deemed filed
when it is handed over to prison officials for mail to the court.  *Brand v. Motley*, 526
F.3d 921, 925 (6th Cir. 2008).  Absent evidence to the contrary, a prisoner does so on
the date they filed the complaint.  *Id.* (citing *Goins v. Saunders,* 206 Fed.Appx. 497,
498 n. 1 (6th Cir.2006)).

(*Id.*)  In contrast to *Mattox*, Beasley did not exhaust his administrative remedies for his excessive force claim in his original complaint before filing suit.  Furthermore, even if this Court looked to the filing date of Beasley's amended complaint as the benchmark for the PLRA's exhaustion requirement, his suit was still premature because Beasley did not exhaust MBP-354 until October 17, 2024, three months after filing his amended complaint.  Finally, the Sixth Circuit's holding in *Mattox* does not apply to Beasley's case because this Court only permitted the filing of an amended complaint so that Plaintiff could rectify deficiencies in his initial complaint, not so that Plaintiff could add new claims.  (ECF No. 4, PageID.18.)

In the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Beasley properly exhausted his administrative remedies though MBP-354.  Although Beasley did mention Watson and his excessive force claim against Watson at Step I of MBP-354, he failed to appeal the grievance through Step III before filing his initial suit as required by the PLRA.

## V.  Conclusion

The Court **grants** the Defendant's motion for summary judgment and shall dismiss the case.

Dated:  April 11, 2025                         /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U. S. MAGISTRATE JUDGE

16

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).